UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CRYSTAL D.,

                Plaintiff,

       -v-

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.

_____

19-CV-06696-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Crystal D.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is denied, defendant's motion (Dkt. No. 11) is granted, and the case is dismissed.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB and SSI on September 12, 2016, with an alleged onset date of December 22, 2015. (Administrative Transcript ["Tr."] 172-180). The applications were initially denied on November 21, 2016. (Tr. 104-119). Plaintiff timely filed a request for an administrative hearing. (Tr. 121-122). A hearing was held before Administrative Law Judge Andrew J. Soltes, Jr., on December 10, 2018. (Tr. 31-79). Plaintiff appeared with counsel. A vocational expert also appeared. On December 27, 2018, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. (Tr. 12-28). On July 22, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 1-6). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).   Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.   The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).   The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.   While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.   The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.   Further, the Commissioner's factual conclusions must be applied to the correct legal standard.   *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).   Failure to apply the correct legal standard is reversible error.   *Id.*

II.   <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).   The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c).   Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.   *Id.* §§404.1520(d), 416.920(d).   If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.   *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.   *Id.* §§404.1520(e), 416.920(e).   RFC "is the most [the claimant] can still do despite [his or her] limitations."   *Id.* §§404.1545(a)(1), 416.945(a)(1).   The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."   *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.   *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.* §§404.1520(g)(1), 416.920(g)(1).   If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 22, 2015, the alleged onset date.  (Tr. 17).  At step two, the ALJ found that Plaintiff had the following severe impairments: Systematic Lupus Erythematosus (Lupus); cervical spine disorder; left shoulder disorder; and migraine headaches.  (Tr. 17-19).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19).

Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in the regulations except:

> she is limited to occasional fingering and handling with the upper right extremity and frequent fingering and handling with the upper left extremity; frequent reaching; occasional stooping, kneeling, crouching and crawling; no climbing ladders, ropes, scaffolds, and no unprotected heights.  She must avoid use of heavy machinery, avoid constant repetitive twisting and turning of the neck during an 8 hour workday, avoid constant, repetitive overhead reaching during 8 hour workday, and may be off task up to 10% of an 8 hour workday.

(Tr. 19).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff is unable to perform any past relevant work.  (Tr. 23).  At step five, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Surveillance System Monitor; Call Out Operator; and Election Clerk.   (Tr. 24). Accordingly, the ALJ determined that Plaintiff has not been under a disability from December 22, 2015, through the date of the decision.  (Tr. 25).

IV.    *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred in relying on the consultative medical examiner's concededly "vague" opinion and instead relied on his own lay interpretation of the medical data to determine Plaintiff's highly detailed RFC.   Contrary to Plaintiff's argument, the Court finds that the ALJ properly considered the medical opinion evidence and that substantial evidence in the record supports the ALJ's RFC finding.

As an initial matter, Plaintiff's argument that the ALJ must base his RFC finding on a medical opinion, is unsupported.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical *and other evidence* in your case record") (emphasis added), §§ 404.1545(a)(3), 416.945(a)(3) (the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record); *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (finding that the ALJ's RFC finding, which restricted Berry to non-stressful work,

was supported by the clinical findings of an examining psychiatrist and Berry's hearing testimony); *Corbiere v. Berryhill* 760 F. App'x 54, 56 (2d Cir Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, and relying, instead, on the relevant medical findings in the treatment notes); *Monroe v. Comm'r of Soc. Sec*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes and activities of daily to formulate the RFC assessment, and rejecting the argument that a medical opinion was required); *Johnson v. Colvin*, 669 Fed. App'x 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC).

Importantly, the absence of a requirement that an ALJ decision must be supported by a medical opinion is consistent with Second Circuit case law that the burden is on plaintiff to prove the RFC, not on the ALJ. *Poupore*, 566 F.3d at 306; *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found). In this case, the ALJ appropriately relied on Dr. Dave's November 2016 opinion and findings; Plaintiff's treatment notes, which included the statement of Plaintiff's primary care provider, Dr. Laurie Donahue, that Plaintiff may return to work; and Plaintiff's activities of daily living, to conclude that she could do a range of sedentary work.

Contrary to Plaintiff's argument, the ALJ reasonably gave significant weight to Dr. Dave's opinion that she had only moderate limitations in gross motor manipulation through the right hand and left shoulder; for repetitive reaching overhead with the left arm;

for repetitive turning of the head; and for lifting, carrying, pushing and pulling of heavy objects. (Tr. 23; Tr. 366). While the ALJ stated that Dr. Dave's opinion that Plaintiff has "moderate" limitations was "somewhat vague" (Tr. 23), The ALJ explained that this is because the term "moderate" is not defined in the social security regulations. Nevertheless, he went on to explain that he considered Dr. Dave's opinion in the context of his medical findings, and those findings provided support for an RFC of sedentary work, with the additional limitations specified. (Tr. 23). *Caci v. Comm'r of Soc. Sec.*, 2020 WL 43512, at *2 (W.D.N.Y. Jan. 2, 2010) (finding that terms that such as "mild" and "moderate" were not vague where they were supported by examination findings); *Monroe v. Comm'r of Soc. Sec*, 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) (finding that statements using vague language may be rendered "more concrete" by the facts of the underlying opinion and other evidence in the record); *Zongos v. Colvin*, 2014 WL 788791 *10 (N.D.N.Y. Feb. 25, 2014) (noting that the ALJ could look to the specific accompanying information in a an examiner's report to understand any vague verbiage). As the ALJ noted, Dr. Dave's examination report documented limited positive findings. (Tr. 22-23, Tr. 364-66). Specifically, Dr. Dave found that Plaintiff had full range of motion of the lumbar spine and negative straight leg raising. (Tr. 365). Dr. Dave found that Plaintiff had only mild tenderness in the left shoulder, and full range of motion of elbows, forearms, wrists and left hand. (Tr. 365). Plaintiff had a normal gait and stance, and was able to walk on heels and toes without difficulty. (Tr. 364). Plaintiff's reflexes were equal, her sensation was unimpaired, and her motor strength was only slightly diminished. (Tr. 365). The ALJ acknowledged that Plaintiff had limited (but possible) range of motion in her cervical spine with tenderness and spasm, and that she declined an examination of her

right hand due to complaints of pain.  (Tr. 19, 365).  However, despite these positive findings, Dr. Dave observed that Plaintiff appeared to be in no acute distress, and was able to change for the examination and get on and off the examination table.  (Tr.364).  Moreover, despite the findings related to her arms and neck, Plaintiff admitted to Dr. Dave that she could cook, clean, and shop.  (Tr. 363).  Thus, Dr. Dave's examination report, in its entirety, provides support for the ALJ's RFC finding that plaintiff could do a limited range of sedentary work, the least physically demanding of the work categories.

Plaintiff asserts that the ALJ did not incorporate Dr. Dave's "moderate limitations" in repetitive reaching overhead and repetitive turning of the head.  (Tr. 366).  However, the ALJ did so when he found that plaintiff should avoid constant repetitive twisting and turning of the neck, and should avoid constant repetitive overhead reaching.  (Tr. 19).  Courts have affirmed decisions which did not include manipulative or twisting limitations in the RFC finding even where the medical opinions assessed up to moderate limitations in reaching or twisting of the spine.  *See e.g. Koscelski v. Comm'r of SSA*, 2019 WL 7403715, *3 (W.D.N.Y. Dec. 30, 2019) (upholding RFC for light work, which did not include manipulative limitations, where ALJ gave great weight to consultative examiner's opinion that plaintiff had a moderate limitation in overhead reaching); *Scholtisek v. Colvin*, 110 F.Supp.3d 464, 476 (W.D.N.Y. 2015) (finding that RFC for medium work, with no twisting/postural limitations, is not inconsistent with consultative examiner's opinion that plaintiff had, *inter alia*, up to moderate limitation in repetitive bending/twisting of the lumbar spine; *Drennen v. Astrue*, 2012 WL 42496, *5-6 (W.D.N.Y. Jan. 9, 2012) (one consultative examiner's opinions that plaintiff had moderate limitations in sustained physical activities and another's opinion that plaintiff had mild-to-moderate limitations for,

*inter alia*, twisting of the thoracolumbar spine were consistent with RFC for sedentary work with ability to occasionally climb, squat, kneel, and crawl); *Martinez v. Comm'r of Soc. Sec.*, 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016), report and recommendation adopted, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016) (finding that consultative examiner's moderate restrictions for, *inter alia*, overhead reaching and stooping were consistent with an RFC for light work); *Harris v. Comm'r of Soc. Sec.*, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) report and recommendation adopted, No. 1:09-CV-1112, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding that slight to moderate limitations in activities that require lifting, carrying, and reaching was consistent with the ALJ's conclusion that plaintiff could perform a full range of light work that did not include any reaching limitation).   Here, unlike in the cases above, the ALJ did actually include manipulative and neck-twisting postural limitations to account for the moderate limitations assessed in these areas by Dr. Dave.

Plaintiff further argues that the ALJ erred when he stated that he gave Dr. Dave's opinion significant weight because it was "reasonably supportive of the limitations reflected in the above noted residual functional capacity." (Tr. 23).  She argues that this reasoning is impermissibly circular in that the ALJ justified the weight he gave to Dr. Dave's assessment based on his already-determined RFC.  The Court finds, however, that this argument misconstrues what the ALJ stated.  He stated in full:

> [C]onsidering [Dr. Dave's] assessment within the context of the overall medical report, documenting limited positive clinical findings, that are consistent with the reported findings of the claimant's treating medical providers, and the limited nature of the claimant's treatment, I consider Dr. Dave's assessment of the claimant's limitations reasonably supportive of the limitations reflected in the above noted residual functional capacity.  For these reasons, I afford [Dr. Dave's opinion] significant weight.

(Tr. 23).  The Court finds that, when taken in context, the ALJ was simply explaining why he arrived at the RFC that he did.  It was not circular logic.

In addition to relying on Dr. Dave's findings and opinion, the ALJ also relied on Plaintiff's treatment notes to conclude that she could do a range of sedentary work.  As the ALJ discussed, plaintiff's treatment records showed little evidence of consistent treatment for neck or left shoulder pain.  (Tr. 27).  Instead, they show that plaintiff complained of neck and left-shoulder pain after a May 2014 motor vehicle accident, but neurological examinations were non-focal.  (Tr. 259).  Plaintiff had a computed tomography scan of the cervical spine in May 2014, which, as the ALJ noted, revealed no abnormality.  (Tr. 21, 290).  Plaintiff saw a chiropractor and physical medicine physician temporarily in 2016, for her neck and shoulder pain, but there is no evidence of further treatment for these conditions.  (Tr. 21, 222, 227, 255).  *See* SSR 16-3p, 2017 WL 5180304, at *9 (explaining that if the extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record).  Moreover, as the ALJ highlighted, there are no opinions from any medical providers limiting Plaintiff's activities because of neck, back, or left shoulder pain. (Tr. 21).  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (noting that the Commissioner may rely not only on what the record says, but also on what it does not say); *see Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (ALJ properly relied on the absence of findings in the record regarding the plaintiff's alleged inability to sit).

The ALJ also considered Plaintiff's treatment for lupus, and its impact on her joints, including her neck, shoulder, wrists and hands.  (Tr. 21-22).  Those treatment records also do not support Plaintiff's allegation that she had additional limitations in overhead reaching or in twisting of her neck.  The ALJ noted that plaintiff's treatment was very limited, and that she was not complying with it.  (Tr. 21). Plaintiff was initially diagnosed with undifferentiated connective tissue disease highly concerning for lupus in February 2016.  (Tr. 21, 433).  Plaintiff continued to be treated for lupus for the next few months through August 2016.  (Tr. 21, 311-35).  While in treatment, she was not getting the routine blood tests that were recommended to monitor the side effects of her treatment by her rheumatologists.  (Tr. 322-23, 459).  This resulted in a lapse in the treatment with Imuran for 12 days.  (Tr. 459).  Plaintiff's rheumatologists had attempted to reach her by telephone in August and September 2016, to advise her to get her blood tests, but her voicemail box was full and she was not answering her telephone.  (Tr. 324).  When they did finally reach her in late-September 2016, she complained of symptoms, but declined to come in for an examination that had been scheduled for that day.  (Tr. 325-326).  Thus, even in the months she had treatment, Plaintiff was not fully cooperative with her treatment recommendations.

Significantly, between August 2016 and March 2017, Plaintiff had no rheumatological treatment.  (Tr. 464).  In fact, in January 2017, Plaintiff told Dr. Donahue that she had not followed up with her rheumatologist since the prior August and had elected to stop taking Plaquenil, the medication that had been prescribed to her.  (Tr. 21, 567). While plaintiff claimed that she was afraid to take Plaquenil because it could cause blindness as a side effect, her rheumatologists had recommended yearly eye

examinations as part of their comprehensive treatment to monitor for side-effects.  (Tr. 319).  By the time plaintiff resumed treatment in March 2017, she had been off medication Imuran and Plaquenil for almost 7 months because she failed to show, or canceled, many of her appointments and her medications were not renewed.  (Tr. 21, Tr. 464).  While she still had occasional flare ups in her wrists and hands (but no complaints of neck pain), she had been managing them with ibuprofen.  (Tr. 468).  The ALJ further observed that on October 5, 2017, Plaintiff reported that, despite pain in her left wrist and right foot, she did not want to take any rheumatology medication, which she admitted to have taken for only seven months.  (Tr. 22, 475).

Plaintiff again stopped seeing her rheumatologists and, when she saw Dr. Donahue in July 2018, Plaintiff told her that she had not been back to her rheumatologist in a year.  (Tr. 565).  In fact, she had also not been back to see Dr. Donahue in the prior year-and-a-half.  (Tr. 565).  Plaintiff told Dr. Donahue that she had been doing generally well and wanted to resume working.  (Tr. 565).

Thus, a review of Plaintiff's treatment notes indicates that plaintiff was not compliant with her treatment, which could have improved her joint pain.  *See* SSR 16-3p, 2017 WL 5180304, at *9; *Campbell v. Comm'r*, 465 F. App'x 4, 2012 WL 29321 *3 (finding that when the claimant had seizures it was often caused by his failure to take medications).  Relatedly, plaintiff's treatment records also show that, while plaintiff had some pain when her symptoms flared, her pain was manageable because she did not feel that she needed treatment from a specialist. *Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (noting that it is not enough for the claimant to show he had pain; and explaining that disability requires more than mere inability to work without pain, "to be

disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).

In addition to relying on the opinions of Dr. Dave and Dr. Donohue, and on Plaintiff's treatment notes, the ALJ also considered plaintiff's activities of daily living when he formulated the RFC finding.  (Tr. 18, 22).  Plaintiff's activities included cooking, cleaning, shopping, and socializing with friends.  (Tr. 18, 22, 363).  The Second Circuit has found that activities such as Plaintiff's support a finding of light work, which is more exertionally demanding than the sedentary work to which the ALJ restricted plaintiff.  *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that the ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of an RFC finding for light work); *Poupore*, 566 F.3d at 307 (the claimant's varied activities, including occasional vacuuming, washing dishes, driving, watching television, reading, and using the computer, supported an RFC finding for light work); *see also Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("[S]ubstantial evidence of routine activities" properly found to be inconsistent with claims of total disability).

In short, the ALJ's RFC finding for a reduced range of sedentary work is supported by substantial evidence, including: the opinion of Dr. Donahue that Plaintiff could return to work as a health aide; the opinion of Dr. Dave that plaintiff had at most moderate limitations; plaintiff's treatment notes showing largely normal findings and repeated non-compliance with treatment; and her routine daily activities.  *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")).

## CONCLUSION

. For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 11) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      February 22, 2021
            Buffalo, New York


            _____
            MICHAEL J. ROEMER
            United States Magistrate Judge

- 16 -